1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## EASTERN DISTRICT OF CALIFORNIA

8
9
10

| | | |
|---|---|---|
| 11 | MICHAEL J. PAYAN, | ) ) ) |
| 12 | Plaintiff, | ) ) |
| 13 | vs. | ) ) ) |
| 14 | H. TATE, et al., | ) ) |
| 15 | Defendants. | ) ) |

1:13cv00807 LJO DLB PC

FINDINGS AND RECOMMENDATIONS
FINDING COGNIZALBE
CLAIMS AND DISMISSING CERTAIN
CLAIMS

THIRTY DAY DEADLINE

16
17
            Plaintiff Michael J. Payan ("Plaintiff") is a prisoner proceeding pro se and in forma
18   pauperis in this civil rights action pursuant to 28 U.S.C. § 1983.  Plaintiff filed this action on
19   May 28, 2013.  He names California Correctional Institution ("CCI") doctors H. Tate, A.
20   Joaquin, M. Vu, S. Sheisha and CCI Physician's Assistant T. Bingamon as Defendants.
21   **A.   <u>LEGAL STANDARD</u>**
22
            The Court is required to screen complaints brought by prisoners seeking relief against a
23   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).
24   The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are
25   legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or
26   that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.
27
28

1

§ 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.**     **SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at CCI, where the events at issue occurred.

Plaintiff alleges that he lost balance and fell in the shower on July 21, 2010.

Plaintiff was seen by Defendant Bingamon on August 11, 2010.  Plaintiff told Defendant Bingamon that he felt a painful tear in his left shoulder when he fell, and that he could not use his left arm or sleep because of pain.  Defendant Bingamon told Plaintiff that he had a torn tendon in his rotator cuff and that he would order an x-ray.  Plaintiff told him that prior doctors have said that x-rays were not sufficient to detect tendon or muscle injuries, and he asked for an MRI.  Defendant Bingamon got upset and told Plaintiff that he was careless, and he was lucky he was getting an x-ray.

Plaintiff saw Defendant Bingamon again on September 29, 2010.  He told Plaintiff that the x-ray did not pick up any tears in the tendon.  Defendant Bingamon indicated that he would order a steroid injection and prescribe Gabapentin, to which Plaintiff objected.  Defendant Bingamon told Plaintiff that if he did not consent to the injection and Gabapentin, he would terminate the appointment and Plaintiff would forfeit all medical attention.  Plaintiff said that he did not want to forfeit medical care and Defendant Bingamon told him that he should not make a habit of complaining about medical care.

Plaintiff took Gabapentin, which made him feel sick and did not relieve the pain.

Plaintiff returned to Defendant Bingamon on October 20, 2010.  Defendant Bingamon told Plaintiff that because of his complaints, his supervisor, Defendant Tate, got upset and discontinued Gabapentin because it was not for torn tendons.  Defendant Bingamon told Plaintiff that he would be scheduled for an injection and physical therapy, and if there was no improvement, an MRI.  Defendant Tate confirmed this plan and gave Plaintiff an injection.  Defendant Tate told Plaintiff that he was scheduled for an MRI to get a proper diagnosis.

Plaintiff asked how Defendant Tate knew where to locate the injection, but he refused to answer and sent Plaintiff back to his cell.

On November 2, 2010, Plaintiff returned to Defendant Bingamon and reported that he could not use his left arm and that he was in extreme pain.  Plaintiff said that the injection did not work and requested an MRI.  Defendant Bingamon became angry and told Plaintiff that wasn't going to treat Plaintiff because of his complaints.

On or around December 2, 2010, Plaintiff saw Defendant Tate.  Defendant Tate told Plaintiff that he hated whiners and inmates who told doctors what to do, and that an MRI wasn't worth the five dollars that it would cost Plaintiff.  Defendant Tate told Plaintiff that if he continued to complain, he would cancel the MRI.

On December 15, 2010, Plaintiff filed a medical care grievance regarding Defendant Tate's medical treatment and threats.  On January 4, 2011, Defendant Sheisha, the Chief Physician, interviewed Plaintiff at the Second Level and Plaintiff reiterated his complaints about Defendant Tate and told Defendant Sheisha that he believed he had a torn tendon.  Defendant Sheisha told Plaintiff that he wasn't the first one to complaint about Defendant Tate, but that the medical staff doesn't get paid enough to look into petty matters.  Defendant Sheisha turned the grievance into a staff complaint and ended the interview.  In the Second Level response, Defendant Joaquin, the Chief Medical Officer, only reiterated part of the interview and implied that because an inquiry was done, the inquiry partially granted the complaint.  Plaintiff believes that Defendants Sheisha and Joaquin deliberately turned Plaintiff's grievance into a staff complaint to make the complaint confidential and to allow for the continuation of improper treatment.

After Plaintiff filed his grievance against Defendant Tate, Defendant Tate recommended that the MRI be disapproved.

4

On January 5, 2011, Defendant Sheisha gave Plaintiff a second steroid injection.  Plaintiff told Defendant Sheisha that the previous injection did not work and that the pain was worsening.  Plaintiff said that he did not consent to the injection because it was being performed without an MRI.  Defendant Sheisha told Plaintiff that if he did not consent, he would be charged with interfering with medical staff orders and would not receive any treatment at all.  Plaintiff consented to the injection out of fear.

Plaintiff did not experience any relief after the second injection.

On March 9, 2011, Plaintiff saw Defendant Bingamon and reported that his shoulder was in constant pain.  Defendant Bingamon told Plaintiff that he had upset his supervisor, Defendant Tate, because of the grievance, and that he wasn't going to "go against his supervisor."  Compl. 10.  He sent Plaintiff home.

On April 11, 2011, Plaintiff filed out a Health Care Request Form and indicated that he was still experiencing pain.

On May 4, 2011, Plaintiff saw Defendant Vu and told him of his dissatisfaction with his prior care.  Defendant Vu looked at Plaintiff's prior grievances and told Plaintiff that he should not complain about the people that have "the keys to his life."  Compl. 11.  He told Plaintiff that he needed an MRI, but that because of the problems that Plaintiff had caused, he'd have to go through shots and physical therapy first.  Plaintiff told Defendant Vu that he had already had two shots and that they did not work, but Defendant Vu said that this was the only way that Plaintiff would be given an MRI.

Plaintiff was not seen again until December 1, 2011.  During that time, he continued to complain in medical requests of severe pain and limited use of his shoulder.

When Plaintiff saw Defendant Vu on December 1, 2011, he continued to complaint of pain and asked for an MRI.  Defendant Vu said that CDCR policy prevents him from ordering an MRI without prior x-rays, shots, physical therapy and another shot.  Plaintiff told Defendant Vu

that the prior injections did not work and asked for a copy of the cited policy.  Defendant Vu became angry and told Plaintiff that he would take the injections or nothing at all.

On December 16, 2011, Plaintiff saw Defendant Sheisha and received an injection even though he pleaded for an MRI.  Defendant Sheisha told him that if he did not consent to the injections, then he would receive no treatment at all.

On January 10, 2012, Plaintiff submitted a Health Care Request Form because he experienced a painful tear in his shoulder.

He was seen by Defendant Vu on January 24, 2012.  Plaintiff's neck and shoulder were swollen and he had no mobility without pain.  He requested stronger pain medication and an MRI because the injections were making his shoulder worse.  Defendant Vu told Plaintiff that he was not a doctor, and that he would continue to treat him pursuant to policy even if the injections were not working.

On February 16, 2012, Plaintiff submitted a Health Care Request Form due to extreme pain and clicking noises in his shoulder.  He submitted additional requests on March 26 and April 26, 2012, after he was not seen.  Plaintiff filed another grievance on April 5, 2012.

Plaintiff was seen by Defendant Vu on April 27, 2012, and complained of worsening shoulder pain.  Defendant Vu told Plaintiff that he should never have filed a grievance on him, and that although he did need an MRI, he was going to note that Plaintiff did not need one.  Defendant Vu told Plaintiff that he was going to order another injection and physical therapy because policy dictates his treatment.  Plaintiff pleaded for other treatment, but Defendant Vu refused to listen and sent him back to his cell.

Plaintiff continued to experience pain over the next several months and went without further treatment despite requests.

Defendant Vu interviewed Plaintiff on July 2, 2012, in connection with the prior grievance.  He again told Plaintiff that he should not have filed a grievance against him and that he would only get injections pursuant to policy.

Plaintiff feared that if he did not get the injections, then he would not get any treatment. On July 13, 2012, he received another steroid injection from Defendant Sheisha.  Plaintiff asked for an MRI, but Defendant Sheisha told him that he was not going to tend to his "stupid complaints" and that he was tired of Plaintiff's grievances.  Compl. 15.

On July 20, 2012, Plaintiff saw Defendant Bingamon, who diagnosed inflammation of the left shoulder and deterioration of his shoulder tendon.  He told Plaintiff that he needed an MRI, but that he was not going to get involved in Plaintiff's problems with other doctors.

On August 11, 2012, Plaintiff submitted a Health Care Request Form complaining of extreme pain.  He had been on the list for physical therapy for one month, but had not been seen. Plaintiff submitted another form on August 24, 2012, complaining of extreme pain and limited mobility.  Plaintiff submitted a third request on August 29, 2012, explaining that earlier in the day, his shoulder gave out and he felt a shock of pain.

On October 5, 2012, Plaintiff told Defendant Vu that he had gone through the physical therapy evaluation but was not better.  Defendant Vu told Plaintiff that it did not matter how he felt, because he would still need to have another injection before he would consider recommending an MRI.

Plaintiff went for two months without treatment and eventually requested help from a correctional officer after his shoulder tore when he was getting out of bed.

On November 27, 2012, Plaintiff submitted a Health Care Request Form complaining of extreme pain and asking for an MRI.

Plaintiff saw Defendant Vu on November 29, 2012, and explained that he had reinjured his shoulder.  Defendant Vu told Plaintiff that he would order the last injection when he wanted, and that because he was in a "good mood," he would order an MRI.  Compl. 17.

On December 5, 2012, Defendant Sheisha gave Plaintiff another injection.

Plaintiff received an MRI on December 12, 2012.  The test revealed a large full-thickness tear of the tendon and atrophy, a partial tear of another tendon and other shoulder problems.

On January 10, 2013, Plaintiff was seen by Defendant Vu, who told Plaintiff that he had several tears in the muscles surrounding the rotator cuff and that he was sending Plaintiff to the prison orthopedist.

On January 22, 2013, Plaintiff saw the orthopedic surgeon.  Dr. Lewis told Plaintiff that he had torn three of the four major muscles that make up the rotator cuff and that the atrophy rendered it inoperable.  He expressed concern as to how long Plaintiff had been in pain and told Plaintiff that the steroid injections may have caused, or contributed to, the atrophy.

On February 8, 2013, Plaintiff saw specialist Dr. Heiser for a second opinion.  He told Plaintiff that the injury was inoperable, and that he could alter the mechanics of the shoulder by fusing the bicep muscle to the supraspinatus muscle.  Dr. Heiser did not recommend this, however, because of Plaintiff's age.  Dr. Heiser told Plaintiff that these types of injuries need to be diagnosed as early as possible and properly treated.

Based on these allegations, Plaintiff alleges (1) retaliation in violation of the First Amendment by Defendants Bingamon, Tate and Vu; (2) deliberate indifference against Defendants Bingamon, Tate, Vu, Sheisha and Joaquin; and (3) violation of substantive due process against Defendants Bingamon, Tate, Vu and Sheisha.

**C.   ANALYSIS**

1.   Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff's allegations are sufficient to state a First Amendment retaliation claim against Defendants Bingamon, Tate and Vu.  Plaintiff will be directed on service by separate order.

2.   Eighth Amendment

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d 1091, 1096 (9th Cir. 2006)).  Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's

pain or possible medical need, and (b) harm caused by the indifference." <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  <u>Snow</u>, 681 F.3d at 985 (citation and quotation marks omitted); <u>Wilhelm</u>, 680 F.3d at 1122.

Plaintiff's allegations are sufficient to state a claim against Defendants Bingamon, Tate, Vu and Sheisha based on the medical treatment rendered to Plaintiff.  The allegations also support a claim against Defendants Sheisha and Joaquin based on their review of Plaintiff's grievances.  <u>Jett v. Penner</u>, 439 F.3d 1091, 1098 (9th Cir. 2006).  Plaintiff will be instructed on service by separate order.

3.   <u>Substantive Due Process</u>

"To establish a violation of substantive due process . . . , a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.  Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims."  <u>Patel v. Penman</u>, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), <u>cert. denied</u>, 117 S. Ct. 1845 (1997); <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 842 (1998).

Here, Plaintiff attempts to allege a substantive due process claim based on his right to be free from "unjustified intrusions into the body which inturns [sic] includes the right to refuse unwanted and harmful medical treatment…"  Compl. 20.  However, in this case, the Eighth Amendment "provides [the] explicit textual source of constitutional protection . . . ."  <u>Patel</u>, 103 F.3d at 874.  Therefore, the Eighth Amendment, rather than the Due Process Clause of the Fourteenth Amendment, governs Plaintiff's claims.

Plaintiff fails to state a claim under the Fourteenth Amendment and this deficiency cannot be cured by amendment.

**D.   FINDINGS AND RECOMMENDATIONS**

Based on the above, the Court finds that this action should go forward on the following cognizable claims:  (1) retaliation in violation of the First Amendment by Defendants Bingamon, Tate and Vu; and (2) deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendants Bingamon, Tate, Vu, Sheisha and Joaquin.  It does not state any other claims and the deficiency identified above cannot be corrected.  Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012) (internal quotation marks and citation omitted).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 8, 2014**                        _/s/ Dennis L. Beck_
                                                    UNITED STATES MAGISTRATE JUDGE