1
2
3
4
5
6              # UNITED STATES DISTRICT COURT
7                  EASTERN DISTRICT OF CALIFORNIA
8
9
10
11   MICHAEL J. PAYAN,                    )   1:13cv00807 LJO DLB PC
                                          )
12                      Plaintiff,        )   ORDER GRANTING IN PART
                                          )   PLAINTIFF'S MOTION TO FILE
13          vs.                           )   AMENDED COMPLAINT
                                          )
14   H. TATE, et al.,                     )   (Document 67)
                                          )
15                      Defendants.       )
                                          )
16   _____ )

17          Plaintiff Michael J. Payan ("Plaintiff"), a state prisoner proceeding pro se and in forma

18   pauperis, filed this civil rights action on May 28, 2013.  This action is proceeding on the

19   following cognizable claims: (1) retaliation in violation of the First Amendment by Defendants

20   Bingamon, Tate and Vu; and (2) deliberate indifference to a serious medical need in violation of

21   the Eighth Amendment against Defendants Bingamon, Tate, Vu, Shiesha and Joaquin.

22          After the Court denied a motion to dismiss the Eighth Amendment claim, Defendants

23   filed their answer on February 17, 2015.  The Court issued a Discovery and Scheduling Order on

24   February 18, 2015.  Pursuant to the order, the deadline to amend was June 18, 2015.

25          On May 19, 2015, Defendants filed a timely motion for summary judgment based on

26   Plaintiff's failure to exhaust his administrative remedies.  The motion is pending.

27

28

                                           1

On June 9, 2015,[1] Plaintiff filed a timely motion to amend his complaint.  Defendants opposed the motion on July 13, 2015, and Plaintiff filed his reply on July 28, 2015.  The motion is deemed submitted pursuant to Local Rule 230(l).

A.    **ALLEGATIONS IN COMPLAINT**

Plaintiff is currently incarcerated at Pelican Bay State Prison ("PBSP").  The events complained of occurred at California Correctional Institution ("CCI"), where the events at issue occurred.

Plaintiff alleges that he lost balance and fell in the shower on July 21, 2010.

Plaintiff was seen by Defendant Bingamon on August 11, 2010.  Plaintiff told Defendant Bingamon that he felt a painful tear in his left shoulder when he fell, and that he could not use his left arm or sleep because of pain.  Defendant Bingamon told Plaintiff that he had a torn tendon in his rotator cuff and that he would order an x-ray.  Plaintiff told him that prior doctors have said that x-rays were not sufficient to detect tendon or muscle injuries, and he asked for an MRI.  Defendant Bingamon got upset and told Plaintiff that he was careless, and he was lucky he was getting an x-ray.

Plaintiff saw Defendant Bingamon again on September 29, 2010.  He told Plaintiff that the x-ray did not pick up any tears in the tendon.  Defendant Bingamon indicated that he would order a steroid injection and prescribe Gabapentin, to which Plaintiff objected.  Defendant Bingamon told Plaintiff that if he did not consent to the injection and Gabapentin, he would terminate the appointment and Plaintiff would forfeit all medical attention.  Plaintiff said that he did not want to forfeit medical care and Defendant Bingamon told him that he should not make a habit of complaining about medical care.

Plaintiff took Gabapentin, which made him feel sick and did not relieve the pain.

---

[1] Although the motion was filed by the Court on June 22, 2015, Plaintiff signed the proof of service on June 9, 2015. *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009).

Plaintiff returned to Defendant Bingamon on October 20, 2010. Defendant Bingamon told Plaintiff that because of his complaints, his supervisor, Defendant Tate, got upset and discontinued Gabapentin because it was not for torn tendons. Defendant Bingamon told Plaintiff that he would be scheduled for an injection and physical therapy, and if there was no improvement, an MRI. Defendant Tate confirmed this plan and gave Plaintiff an injection. Defendant Tate told Plaintiff that he was scheduled for an MRI to get a proper diagnosis. Plaintiff asked how Defendant Tate knew where to locate the injection, but he refused to answer and sent Plaintiff back to his cell.

On November 2, 2010, Plaintiff returned to Defendant Bingamon and reported that he could not use his left arm and that he was in extreme pain. Plaintiff said that the injection did not work and requested an MRI. Defendant Bingamon became angry and told Plaintiff that he wasn't going to treat Plaintiff because of his complaints.

On or around December 2, 2010, Plaintiff saw Defendant Tate. Defendant Tate told Plaintiff that he hated whiners and inmates who told doctors what to do, and that an MRI wasn't worth the five dollars that it would cost Plaintiff. Defendant Tate told Plaintiff that if he continued to complain, he would cancel the MRI.

On December 15, 2010, Plaintiff filed a medical care grievance regarding Defendant Tate's medical treatment and threats. On January 4, 2011, Defendant Sheisha, the Chief Physician, interviewed Plaintiff at the Second Level. Plaintiff reiterated his complaints about Defendant Tate and told Defendant Sheisha that he believed he had a torn tendon. Defendant Sheisha told Plaintiff that he wasn't the first one to complain about Defendant Tate, but that the medical staff doesn't get paid enough to look into petty matters. Defendant Sheisha turned the grievance into a staff complaint and ended the interview. In the Second Level response, Defendant Joaquin, the Chief Medical Officer, only reiterated part of the interview and implied that because an inquiry was done, the inquiry partially granted the complaint. Plaintiff believes

that Defendants Sheisha and Joaquin deliberately turned Plaintiff's grievance into a staff complaint to make the complaint confidential and to allow for the continuation of improper treatment.

After Plaintiff filed his grievance against Defendant Tate, Defendant Tate recommended that the MRI be denied.

On January 5, 2011, Defendant Sheisha gave Plaintiff a second steroid injection. Plaintiff told Defendant Sheisha that the previous injection did not work and that the pain was worsening. Plaintiff said that he did not consent to the injection because it was being performed without an MRI. Defendant Sheisha told Plaintiff that if he did not consent, he would be charged with interfering with medical staff orders and would not receive any treatment at all. Plaintiff consented to the injection out of fear.

Plaintiff did not experience any relief after the second injection.

On March 9, 2011, Plaintiff saw Defendant Bingamon and reported that his shoulder was in constant pain. Defendant Bingamon told Plaintiff that he had upset his supervisor, Defendant Tate, because of the grievance, and that he wasn't going to "go against his supervisor." Compl. 10. He sent Plaintiff home.

On April 11, 2011, Plaintiff filed out a Health Care Request Form and indicated that he was still experiencing pain.

On May 4, 2011, Plaintiff saw Defendant Vu and told him of his dissatisfaction with his prior care. Defendant Vu looked at Plaintiff's prior grievances and told Plaintiff that he should not complain about the people that have "the keys to his life." Compl. 11. He told Plaintiff that he needed an MRI, but that because of the problems that Plaintiff had caused, he'd have to go through shots and physical therapy first. Plaintiff told Defendant Vu that he had already had two shots and that they did not work, but Defendant Vu said that this was the only way that Plaintiff would be given an MRI.

Plaintiff was not seen again until December 1, 2011.  During that time, he continued to complain in medical requests of severe pain and limited use of his shoulder.

When Plaintiff saw Defendant Vu on December 1, 2011, he continued to complain of pain and asked for an MRI.  Defendant Vu said that CDCR policy prevents him from ordering an MRI without prior x-rays, shots, physical therapy and another shot.  Plaintiff told Defendant Vu that the prior injections did not work and asked for a copy of the cited policy.  Defendant Vu became angry and told Plaintiff that he would take the injections or nothing at all.

On December 16, 2011, Plaintiff saw Defendant Sheisha and received an injection even though he pleaded for an MRI.  Defendant Sheisha told him that if he did not consent to the injections, then he would receive no treatment at all.

On January 10, 2012, Plaintiff submitted a Health Care Request Form because he experienced a painful tear in his shoulder.

He was seen by Defendant Vu on January 24, 2012.  Plaintiff's neck and shoulder were swollen and he had no mobility without pain.  He requested stronger pain medication and an MRI because the injections were making his shoulder worse.  Defendant Vu told Plaintiff that he was not a doctor, and that he would continue to treat him pursuant to policy even if the injections were not working.

On February 16, 2012, Plaintiff submitted a Health Care Request Form due to extreme pain and clicking noises in his shoulder.  He submitted additional requests on March 26 and April 26, 2012, after he was not seen.  Plaintiff filed another grievance on April 5, 2012.

Plaintiff was seen by Defendant Vu on April 27, 2012, and complained of worsening shoulder pain.  Defendant Vu told Plaintiff that he should never have filed a grievance on him, and that although he did need an MRI, he was going to note that Plaintiff did not need one.  Defendant Vu told Plaintiff that he was going to order another injection and physical therapy

because policy dictates his treatment.  Plaintiff pleaded for other treatment, but Defendant Vu refused to listen and sent him back to his cell.

Plaintiff continued to experience pain over the next several months and went without further treatment despite requests.

Defendant Vu interviewed Plaintiff on July 2, 2012, in connection with the prior grievance.  He again told Plaintiff that he should not have filed a grievance against him and that he would only get injections pursuant to policy.

Plaintiff feared that if he did not get the injections, then he would not get any treatment. On July 13, 2012, he received another steroid injection from Defendant Sheisha.  Plaintiff asked for an MRI, but Defendant Sheisha told him that he was not going to tend to his "stupid complaints" and that he was tired of Plaintiff's grievances.  Compl. 15.

On July 20, 2012, Plaintiff saw Defendant Bingamon, who diagnosed inflammation of the left shoulder and deterioration of his shoulder tendon.  He told Plaintiff that he needed an MRI, but that he was not going to get involved in Plaintiff's problems with other doctors.

On August 11, 2012, Plaintiff submitted a Health Care Request Form complaining of extreme pain.  He had been on the list for physical therapy for one month, but had not been seen. Plaintiff submitted another form on August 24, 2012, complaining of extreme pain and limited mobility.  Plaintiff submitted a third request on August 29, 2012, explaining that earlier in the day, his shoulder gave out and he felt a shock of pain.

On October 5, 2012, Plaintiff told Defendant Vu that he had gone through the physical therapy evaluation but was not better.  Defendant Vu told Plaintiff that it did not matter how he felt, because he would still need to have another injection before he would consider recommending an MRI.

Plaintiff went for two months without treatment and eventually requested help from a correctional officer after his shoulder tore when he was getting out of bed.

6

On November 27, 2012, Plaintiff submitted a Health Care Request Form complaining of extreme pain and asking for an MRI.

Plaintiff saw Defendant Vu on November 29, 2012, and explained that he had reinjured his shoulder. Defendant Vu told Plaintiff that he would order the last injection when he wanted, and that because he was in a "good mood," he would order an MRI. Compl. 17.

On December 5, 2012, Defendant Sheisha gave Plaintiff another injection.

Plaintiff received an MRI on December 12, 2012. The test revealed a large full-thickness tear of the tendon and atrophy, a partial tear of another tendon and other shoulder problems.

On January 10, 2013, Plaintiff was seen by Defendant Vu, who told Plaintiff that he had several tears in the muscles surrounding the rotator cuff and that he was sending Plaintiff to the prison orthopedist.

On January 22, 2013, Plaintiff saw the orthopedic surgeon. Dr. Lewis told Plaintiff that he had torn three of the four major muscles that make up the rotator cuff and that the atrophy rendered it inoperable. He expressed concern as to how long Plaintiff had been in pain and told Plaintiff that the steroid injections may have caused, or contributed to, the atrophy.

On February 8, 2013, Plaintiff saw specialist Dr. Heiser for a second opinion. He told Plaintiff that the injury was inoperable, and that he could alter the mechanics of the shoulder by fusing the bicep muscle to the supraspinatus muscle. Dr. Heiser did not recommend this, however, because of Plaintiff's age. Dr. Heiser told Plaintiff that these types of injuries need to be diagnosed as early as possible and properly treated.

B.     **PROPOSED AMENDMENTS**

Plaintiff's lodged amended complaint seeks to add both new claims and new Defendants to this action. The time frame in the operative complaint began in July 2010, when Plaintiff fell and injured his shoulder, and ended in February 2013, when Plaintiff was informed of the allegedly permanent damage. As to these Defendants, he continues to allege violations of the

First and Eighth Amendments, and attempts to add state law negligence claims based upon the same facts.

In his proposed amended complaint, Plaintiff re-alleges these claims but continues with allegations occurring after February 2013.  He adds facts against Defendants Vu, Shiesha and Tate for their actions in reviewing his appeals between February 2013 and May 2014.  Plaintiff also adds allegations against new Defendants Longcrier, Zamora, Lewis and Baniga for their actions in reviewing Plaintiff's appeals from April 2013 through August 2014.

Plaintiff was transferred to PBSP in July 2014, and he adds facts relating to treatment by new Defendant Thomas after his transfer.  Plaintiff also adds allegations against new Defendants Strawn, Jacobson, McClean and numerous Does based on their review of appeals filed from July 2014 through March 2015.

Based on his new allegations, Plaintiff adds the following causes of action: (1) violation of the Eighth Amendment against Defendants Zamora, Baniga, Longcrier, Thomas, Strawn, Jacobson, McLean and Does; and (2) violation of substantive due process against Defendants Shiesha, Baniga, Joaquin, Longcrier, Lewis, Zamora and Does; and (3) state law negligence/malpractice against all Defendants.

## C.   LEGAL STANDARD

"Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)); *accord Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013).  However, courts "need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile." *AmerisourceBergen Corp.*, 465 F.3d at 951; *accord Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d at 1117.  While "'prejudice to the opposing party carries the greatest weight,'" *Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d at 1117 (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam)), leave

to amend "is properly denied . . . if amendment would be futile," *Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (citing *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010)); *accord Woods v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012); *Silva v. Di Vittorio*, 658 F.3d 1090, 1105-06 (9th Cir. 2011).  Further, "[a] party cannot amend pleadings to 'directly contradict an earlier assertion made in the same proceeding.'"  *Air Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

**D.   <u>ANALYSIS</u>**

    1.   *Events Occurring After Plaintiff's July 2014 Transfer*

A plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997); *Desert Empire Bank v. Insurance Co. of North America*, 623 F.3d 1371, 1375 (9th Cir. 1980).

Plaintiff suggests that a pattern of retaliatory practices, deliberate indifference and due process violations continued after his transfer to PBSP.  He explains that the problem is now "systemic" because his medical file is "filled with inaccurate information as CDCR's Tehachapi Defendants attempted to escape liability by claiming the injury is much older than July 2010. . ." ECF No. 72, at 4.  However, although the allegations may relate to Plaintiff's shoulder treatment, he is attempting to include allegations against new Defendants at a separate institution.  These allegations, spanning from July 2014 through March 2015, occurred at least four years after his original injury, and almost a year and half after the most recent allegations in his original complaint (February 2013).  The events giving rise to the allegations after July 2014 are therefore separate and distinct, and they are not related within the meaning of Rule 20.

Accordingly, Plaintiff may not amend to include any allegations related to events occurring after his July 2014 transfer to PBSP.

2.      *Allegations Related to Events Occurring At CCI*

Plaintiff's allegations against new Defendants Zamora, Baniga, Longcrier and Lewis relate to their involvement in the appeals process for review of events that occurred while Plaintiff was still housed at CCI.  Defendant Zamora's and Longcrier's involvement appears to have started during the time period at issue in the original complaint, or April 2013 at the latest, while Defendants Baniga and Lewis did not become involved until July and August 2014.  As to the existing Defendants, Plaintiff's allegations involve events after February 2013 and relate to Defendant Vu's, Tate's and Shiesha's involvement in the appeals process and/or medical care.

Plaintiff characterizes these allegations as involving ongoing issues "[he] had begun but had not fully exhausted at the time" of his May 28, 2013, complaint.[2]  ECF No. 72, at 2.  Plaintiff states that these claims began with a grievance filed in April 2013, and that the last related grievance was fully exhausted in March 2015.  ECF No. 72, at 6-7.  Plaintiff filed this motion less than ninety days later.

Defendants oppose these amendments based on bad faith, undue delay and prejudice.  In questioning Plaintiff's motive, Defendants argue that he filed the proposed amendment in response to their exhaustion challenge.  While a motion to amend brought to avoid the possibility of an adverse ruling may support a finding of bad faith, *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398-99 (9th Cir. 1986), the issue must be viewed in the context of Plaintiff's status as a prisoner proceeding pro se and the procedural posture of this case.  Plaintiff's confusion as to the proper method to oppose summary judgment is documented in the record, and there is no indication that Plaintiff moved to amend in bad faith.

Plaintiff also points out that he wrote a letter to the Court in April 2014 expressing his concern with Defendant Tate's medical treatment and alleged retaliation, issues which he now

---

[2] The Court notes that Defendants Lewis and Baniga appear to have become involved after Plaintiff filed his May 2013 complaint.

includes in this amendment.  The Court construed the motion as a motion for injunctive relief, and denied it as moot upon Plaintiff's transfer.

Turning to delay, Defendants argue that Plaintiff had the 602 documentation when he filed his original complaint.  However, as Plaintiff states, it does not appear that any of the new claims against these Defendants, perhaps with the exception of some of the state law negligence claims, were exhausted at the time he filed his original complaint.  In this regard, the Court will not permit Plaintiff to tack on a state law negligence claim to the Eighth Amendment claim against existing Defendants for events raised in the original complaint.  Plaintiff could have done so at the time he filed his original complaint, and he will not be permitted to add them now.

Finally, Defendants argue that the amendment would result in prejudice since they have spent time and effort preparing the pending motion for summary judgment based on exhaustion. In weighing prejudice, the Court must take into consideration the stage of the proceedings. Although this action was filed in 2013, it is still relatively early in the proceedings.  Although the Discovery and Scheduling Order issued in February 2015, merits-based discovery was stayed in June 2015 given the pending motion for summary judgment.  The Court also expects to reset the dispositive motion deadline.

While the Court recognizes that Defendants have expended resources in researching the exhaustion issue, this does not necessarily override the liberal standard of Rule 15.  Indeed, as Defendants state, Defendants' arguments relating to exhaustion may also be applicable to newly added claims.

3.    *Futility*

"Substantive due process is ordinarily reserved for those rights that are 'fundamental.'" *Brittain v. Hansen*, 451 F.3d 982, 990 (9th Cir. 2009) (citing *Washington v. Glucksberg*, 521 U.S. 702, 721-22, 117 S.Ct. 2258 (1997)).  "There is no general liberty interest in being free from capricious government action," *Nunez v. City of Los Angeles*, 147 F.3d 867, 873 (9th Cir.

1998) (citation omitted), and to state a substantive due process claim, Plaintiff must demonstrate the deprivation of a protected interest and conscience shocking behavior by the governmental actor, *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2009).

Plaintiff's substantive due process claim is based on his allegations that Defendants Shiesha, Joaquin, Baniga, Longcrier, and various Does failed to perform their duties in reviewing his medical appeals.  He argues that they failed to perform their "legally required" duties by failing to act on evidence and/or failing to provide a remedy for Plaintiff's health care issues. ECF No. 68, 32-33.  Permitting an amendment to add this claim would be futile, as Plaintiff has no constitutional right to an appeals process.  *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

Therefore, Plaintiff may not amend to state a substantive due process claim based on Defendants' review of his medical appeals.

## **ORDER**

Based on the above, Plaintiff's motion to amend is GRANTED IN PART.  Plaintiff may not amend to include any claims arising after his transfer to PBSP, any substantive due process claims, or any state law claims for events raised in the original complaint.

Plaintiff must file an amended complaint within thirty (30) days of the date of service of this order.

At this time, the Court will leave the pending motion for summary judgment on the docket.  Defendants shall notify the Court, within thirty (30) days of receiving notice of

//

///

///

///

Plaintiff's amended complaint, whether they will accept service and enter an appearance for the newly-named Defendants.  Defendants must also inform the Court as to whether they wish to update the pending motion for summary judgment based on Plaintiff's newly added claims.

The stay of merits-based discovery remains in place.

IT IS SO ORDERED.

Dated:   **August 25, 2015**                          /s/ *Dennis L. Beck*
                                                          UNITED STATES MAGISTRATE JUDGE