# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. PAYAN,<br><br>        Plaintiff,<br><br>   v.<br><br>TATE, et al.,<br><br>        Defendants. | Case No. 1:13-cv-00807 LJO DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br>(Document 62)<br><br>THIRTY-DAY OBJECTION DEADLINE |

Plaintiff Michael J. Payan ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on Plaintiff's October 19, 2015, First Amended Complaint.

Defendants Tate, Bingamon, Joaquin, Shiesha and Vu filed the instant motion for summary judgment for failure to exhaust on May 19, 2015.  Plaintiff filed his opposition on July 13, 2015, and Defendants filed a reply, as well as evidentiary objections, on July 17, 2015.  Plaintiff also filed a surreply on August 20, 2015.[1]  The motion is ready for decision pursuant to Local Rule 230(l).

**A.    PROCEDURAL HISTORY**

Plaintiff filed his complaint on May 28, 2013.  On January 8, 2014, the Court screened the complaint and found the following cognizable claims:  (1) retaliation in violation of the First Amendment by Defendants Bingamon, Tate and Vu; and (2) deliberate indifference to a serious

---

[1] Defendants did not object to Plaintiff' surreply.

1

medical need in violation of the Eighth Amendment against Defendants Bingamon, Tate, Vu, Shiesha and Joaquin.

Defendants filed this motion for summary judgment on May 19, 2015. Merits-based discovery has been stayed pending resolution of the motion.

On June 22, 2015, Plaintiff filed a motion to amend the complaint. The Court granted the motion in part on August 25, 2015, and permitted Plaintiff to amend to add certain claims.

Plaintiff filed his First Amended Complaint on October 19, 2015.

The Court screened the First Amended Complaint and issued an order on November 4, 2015, finding the following cognizable claims: (1) retaliation in violation of the First Amendment against Defendants Bingamon, Tate, Vu, Shiesha, Baniga, Joaquin, Longcrier and Does; (2) deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendants Bingamon, Tate, Vu, Shiesha, Joaquin, Baniga, Longcrier and Does; and (3) negligence against Defendants Vu, Tate, Shiesha, Baniga, Joaquin, and Does.

On December 1, 2015, Defendants Tate, Bingamon, Joaquin, Shiesha and Vu notified the Court that they wished to move forward with the pending motion for summary judgment based on exhaustion. Service has not been returned for Defendants Baniga and Longcrier, and they have not made an appearance in this action.

**B.  ALLEGATIONS IN FIRST AMENDED COMPLAINT**

Plaintiff is currently incarcerated at Kern Valley State Prison. From February 2010 through July 2014, Plaintiff was incarcerated at the California Correctional Institution ("CCI"), where the events at issue occurred.

Plaintiff alleges that on or about July 21, 2010, he injured his left shoulder after he fell in the shower.

Plaintiff was seen by Defendant Bingamon on August 11, 2010. Plaintiff told Defendant Bingamon that he felt a painful tear in his left shoulder when he fell. Defendant Bingamon performed range of motion testing, and told Plaintiff that he had a torn tendon in his left rotator cuff and that he would order x-rays. Plaintiff told him that x-rays were not sufficient to detect tendon or

///

muscle injuries, and he asked for an MRI. Defendant Bingamon got upset and told Plaintiff that he was careless, and he was lucky he was getting an x-ray.

On August 11, 2010, Plaintiff had x-rays of his left shoulder taken.

Plaintiff saw Defendant Bingamon again on September 29, 2010, and continued to complain of pain. He told Plaintiff that the x-ray did not pick up any tears in the tendon. Defendant Bingamon ordered a steroid injection and prescribed Gabapentin, to which Plaintiff objected because he did not agree that Gabapentin was "for torn tendons." ECF No. 81, at 8. Plaintiff continued to request an MRI. Defendant Bingamon told Plaintiff that if he did not consent to the injection and Gabapentin, he would terminate the appointment and Plaintiff would forfeit all medical attention. Plaintiff consented to the treatment. Defendant Bingamon refused to alter the course of treatment and told him that he should not make a habit of complaining.

Plaintiff filed grievance number CCI-03-10-13065, complaining that Defendant Bingamon was indifferent to his pain and refused to order necessary diagnostic exams. Plaintiff also requested an MRI.

Plaintiff returned to Defendant Bingamon on October 20, 2010, for the interview related to his appeal. Defendant Bingamon told Plaintiff that because of his complaints, Defendant Tate, his supervisor, got upset and discontinued Gabapentin because it was not for torn tendons. Defendant Bingamon told Plaintiff that he would be scheduled for a steroid injection and considered for physical therapy, and an MRI would be ordered if there was no improvement.

On or about October 26, 2010, Defendant Tate gave Plaintiff an injection. Defendant Tate told Plaintiff that he was scheduled for an MRI to get a proper diagnosis.

On November 2, 2010, Plaintiff returned to Defendant Bingamon. He reported that the injection did not work and requested an MRI. Defendant Bingamon became angry and told Plaintiff that he wasn't going to treat Plaintiff because of his complaints.

On or around December 2, 2010, Plaintiff saw Defendant Tate. Defendant Tate told Plaintiff that he hated whiners and inmates who told doctors what to do, and that an MRI wasn't worth the five dollars that it would cost Plaintiff. He told Plaintiff that he should learn to live with the pain and that if he continued to complain, he would cancel the MRI.

3

On or about December 6, 2010, Defendant Shiesha, as the Second Level reviewer, became aware of Plaintiff's ongoing left shoulder pain and refused to provide a sufficient diagnostic exam.

On December 15, 2010, Plaintiff filed medical care grievance number CCI-03-10-13844 regarding Defendant Tate's medical treatment and threats.

On January 4, 2011, Defendant Shiesha interviewed Plaintiff at the Second Level. Plaintiff reiterated his complaints about Defendant Tate and told Defendant Shiesha that he believed he had a torn tendon. Defendant Shiesha told Plaintiff that he wasn't the first one to complain about Defendant Tate, but that the medical staff does not get paid enough to look into petty matters. Defendant Shiesha turned the grievance into a staff complaint and ended the interview.

In the Second Level response, Defendant Joaquin only reiterated part of the appeal and implied that because an inquiry was done, the inquiry partially granted the complaint. Plaintiff believes that Defendants Shiesha and Joaquin deliberately turned Plaintiff's grievance into a staff complaint to make the complaint confidential and to allow for the continuation of improper treatment.

Defendant "Doe for L.D. Zamora" allowed the appeal to be erroneously denied.

After Plaintiff filed his grievance against Defendant Tate, Defendant Tate recommended that the MRI be disapproved.

On January 5, 2011, Defendant Tate disregarded the risks and gave Plaintiff a second steroid injection. Plaintiff did not experience pain relief.

On March 9, 2011, Plaintiff saw Defendant Bingamon and reported that his shoulder was in constant pain. Defendant Bingamon told Plaintiff that his grievance upset Defendant Tate and that he wasn't going to "go against his supervisor." ECF No. 81, at 15. He told Plaintiff to live with the pain and sent him back to his cell.

On May 4, 2011, Plaintiff saw Defendant Vu and told him of his dissatisfaction with his prior care and prior appeals. Defendant Vu told Plaintiff that he shouldn't complain about the people that have "the keys to his life." ECF No. 81, at 16. He told Plaintiff that he needed an MRI, but because of the problems he caused, he'd have to go through shots and physical therapy first.

///

When Plaintiff saw Defendant Vu on December 1, 2011, he Plaintiff pleaded for an MRI, as one had been originally prescribed in October 2010. Defendant Vu said that CDCR policy prevents him from ordering an MRI without prior x-rays, shots, physical therapy and another shot. Plaintiff asked for a copy of the cited policy so that he could file a grievance. Defendant Vu became angry and told Plaintiff that he would take the injections, or nothing at all.

On December 16, 2011, Defendant Shiesha administered an injection even though Plaintiff pleaded for an MRI. Defendant Shiesha questioned the location of Defendant Tate's prior injections, and told Plaintiff that if he did not consent to the injections, he would be charged with interfering with medical staff and would not receive any treatment at all. Defendant Vu rejected Plaintiff's pleas for an MRI and Plaintiff fearfully consented to the injection.

Plaintiff was seen by Defendant Vu on January 24, 2012, after he further injured his shoulder while performing the recommended exercises. He requested stronger pain medication and an MRI because the injections were making his shoulder worse. Defendant Vu told Plaintiff that he (Plaintiff) was not a doctor, and that he would continue to treat him pursuant to policy even if the injections were not working.

On March 27, 2012, Plaintiff filed health care grievance number CCI-HC-12033521 complaining about the way treatments were given and his further damage.

Plaintiff was seen by Defendant Vu on April 27, 2012, regarding appeal CCI-HC-12033521. He complained of worsening shoulder pain and again requested an MRI. Defendant Vu told Plaintiff that he should never have filed a grievance on him, and although Plaintiff needed an MRI, he was going to note that he did not need one. Defendant Vu told Plaintiff that he was going to order another injection and physical therapy because policy dictates his treatment. Plaintiff pleaded for other treatment, but Defendant Vu refused to listen and sent him back to his cell.

Defendant Shiesha learned of the issue as the First Level reviewer. She adopted the report of Defendant Vu and refused to do her own investigation and evaluation.

Defendant Joaquin learned of the issue as the Second Level reviewer, but turned a blind eye to the issues.

///

1  Defendant "Doe for L.D. Zamora" reviewed the issue at the Director's Level, but failed to
2  correct the issue.

3  Plaintiff believes that his medication was cancelled in retaliation for filing CCI-HC-
4  12033521.  He then filed health care grievance CCI-HC-12033906 alleging retaliation.

5  Defendant Vu interviewed Plaintiff on July 2, 2012, in connection with CCI-HC-12033906.
6  He again told Plaintiff that he should not have filed a grievance against him, and he refused to
7  prescribe the cancelled medication.  Defendant Vu said that Plaintiff would only get injections.
8  Plaintiff asked for a copy of the policy, but Defendant Vu told the escorting officers to take Plaintiff
9  back to his cell and ended the interview without providing a remedy.

10  Defendant Shiesha reviewed CCI-HC-12033906 at the First Level, but adopted Defendant
11  Vu's report and failed to do her own investigation.

12  Defendant Joaquin reviewed CCI-HC-12033906 at the Second Level and again accepted the
13  lower-level decisions.

14  Defendant "Doe for L.D. Zamora" dismissed the retaliation claims at the Director's Level of
15  Review.

16  On July 13, 2012, Plaintiff received another steroid injection from Defendant Shiesha.
17  Plaintiff asked for an MRI, but Defendant Shiesha told him that she was not going to tend to his
18  "stupid complaints" and that she was tired of Plaintiff's grievances.  ECF No. 81, at 25.

19  On July 20, 2012, Plaintiff saw Defendant Bingamon, who diagnosed inflammation of the
20  left shoulder and deterioration of his shoulder tendon.  He told Plaintiff that he needed an MRI, but
21  that he was not going to get involved in Plaintiff's problems with other doctors.

22  Defendant Vu saw Plaintiff again on October 5, 2012.  Plaintiff told him that he had gone
23  through the physical therapy evaluation but was not better.  Defendant Vu told Plaintiff that it did
24  not matter how he felt, because he would still need to have another injection before he would
25  consider recommending an MRI.

26  Plaintiff saw Defendant Vu on November 29, 2012, and explained that he had reinjured his
27  shoulder.  Defendant Vu told Plaintiff that he would order the last injection when he wanted, and
28  that because he was in a "good mood," he would order an MRI.  ECF No. 81, at 28.

1       On December 5, 2012, Defendant Shiesha gave Plaintiff another injection.

2       Plaintiff received an MRI on December 12, 2012.  The test revealed a large full-thickness
3  tear of the tendon and atrophy, a partial tear of another tendon and other shoulder problems.

4       On January 10, 2013, Plaintiff saw Defendant Vu, who told Plaintiff that he had several tears
5  in the muscles surrounding the rotator cuff.  Defendant Vu sent Plaintiff to the prison orthopedist
6  and recommended surgery.

7       On January 22, 2013, Plaintiff saw Dr. Lewis, the orthopedic surgeon.  He told Plaintiff that
8  he had torn three of the four major muscles that make up the rotator cuff, and that the atrophy
9  rendered it inoperable.  He expressed concern as to how long Plaintiff had been in pain and told
10 Plaintiff that the steroid injections may have caused, or contributed to, the atrophy.  Dr. Lewis
11 referred Plaintiff to a specialist.

12      On February 8, 2013, Plaintiff saw specialist Dr. Heiser for a second opinion.  He told
13 Plaintiff that the injury was inoperable, and that a total shoulder replacement was the only real
14 solution.  Dr. Heiser strongly suggested that Plaintiff did not receive any more injections.

15      On February 13, 2013, Plaintiff saw Defendant Vu and again requested the policy.
16 Defendant Vu became defensive and refused to provide it.

17      On April 9, 2013, Plaintiff filed health care appeal CCI-HC-13034823, complaining that
18 Defendants were refusing to provide the policy.  Defendant Vu interviewed Plaintiff on April 17,
19 2013, and again refused to provide it.  He became angry and told Plaintiff that he could get the
20 policy from the law library.

21      Defendant Shiesha accepted Defendant Vu's report on April 19, 2013, and refused to provide
22 the policy.

23      Defendant Longcrier was presented with the issue on May 8, 2013, as the Second Level
24 reviewer.  However, he confused Plaintiff's appeal with new issues and failed to provide a remedy.

25      Defendant "Doe for L.D. Zamora" was presented with the problem but continued to refuse to
26 provide a remedy.

27 ///

28 ///

In late 2013, CCI changed its program and Plaintiff feared losing his lower-bunk chrono, which had been requested by Defendant Bingamon in September 2010 approved by Defendant Tate in March 2011.

On September 17, 2013, Plaintiff asked to have his chronos renewed. On October 29, 2013, Defendant Tate refused to renew the chronos, despite knowing of Plaintiff's conditions.

Plaintiff further alleges that Defendant Vu, in a retaliatory pattern, refused to renew Plaintiff's chronos on "12/6/? (12)". ECF No. 81, at 34.

In November/December 2013, Plaintiff was moved and assigned a top bunk. The top bunks are not equipped with a ladder, causing severe pain when Plaintiff had to jump to the top bunk.

On January 23, 2014, Plaintiff submitted a health care request form after injuring his shoulder. He could not climb up and down his bunk without difficulty, and hurt himself on several occasions.

On January 31, 2014, Plaintiff filed grievance number CCI-HC-140-35914 after being denied medical care and the opportunity to see a doctor other than Defendant Tate.

Defendant Tate interviewed Plaintiff on March 11, 2014, and told him that he'd been sued many times, but no one has ever won. Defendant Tate told Plaintiff that it was his "medical opinion" that he did not need a knee sleeve and that his shoulder pain was in his mind. He denied Plaintiff's request for medication and renewal of his chrono.

Defendant Shiesha failed to perform her own investigation and accepted Defendant Tate's report.

On April 2, 2014, Defendant Longcrier learned of the problem and refused to provide a remedy to receive medical care from someone other than Defendant Tate.

On July 15, 2014, "Doe for J. Lewis" was presented with the problem but refused to provide a remedy.

On March 6, 2014, Plaintiff sought ADA accommodations for a lower-bunk and waist chains. The request was denied on March 28, 2014, because a CDC 7410 noted that Plaintiff did "not need any accommodations" and did not have any limitations. ECF No. 81, at 39. The denial ///

was automatically converted into appeal CCI-HC-14036009, though Section A was bypassed and Plaintiff was not allowed to describe the problem.

Defendant Baniga reviewed the appeal at the First Level, but failed to do his own investigation and adopted the prior report.

On May 8, 2014, Defendant Shiesha became aware of Plaintiff's issues during Second Level review. However, she refused to do her own investigation and denied the appeal.

On August 19, 2014, Defendant "Doe for J. Lewis" denied the appeal at the Director's Level.

## C.     LEGAL STANDARD

The failure to exhaust is subject to a motion for summary judgment in which the court may look beyond the pleadings. Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014). If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice. Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

Defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If Defendants carry this burden, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)). "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Albino, 747 F.3d at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

///
///
///
///

## D.     UNDISPUTED FACTS

*Appeal 03-10-13065*

On October 7, 2010, Plaintiff submitted appeal number 03-10-13065,[2] after a visit with Defendant Bingamon.  Robinson Decl. ¶ 12, Ex. F.  This appeal was partially granted at the Second Level on December 8, 2010.  Robinson Decl. Ex. F.  Plaintiff did not submit this appeal to the Third Level of Review.  Robinson Decl. ¶ 12.

*Appeal 03-10-13844*

On December 15, 2010, Plaintiff submitted appeal number 03-10-13844.  Robinson Decl. ¶ 8, Ex. B.  Plaintiff complained that he had an appointment with Defendant Tate on December 2, 2010, but he was confrontational and dismissive of Plaintiff's pain.  Plaintiff stated that Defendant Tate's unprofessional attitude prevented him from getting proper medical care, and he requested (1) that Defendant Tate be removed from his position; (2) that inmates who file grievances against him not be retaliated against; and (3) that he get necessary medical treatment, including an MRI that was ordered in October 2010.  Robinson Decl. Ex. B.

 The appeal was handled as a staff complaint, bypassing the formal and First Level of appeals.  Robinson Decl. Ex. B.  After Plaintiff was interviewed by Defendant Shiesha, Defendant Joaquin denied the appeal at the Second Level, finding that Defendant Tate did not violate CDCR policy.  Robinson Decl. Ex. B.

In responding to the denial, Plaintiff asked that his appeal be reevaluated and that a "full audit" of all health care complaints filed against Defendant Tate be performed.

The appeal was denied at the Third Level on April 26, 2011.  Robinson Decl. Ex. B.  The denial noted that Plaintiff had improperly added new issues in appealing the Second Level denial.  Plaintiff was also informed that his request for the MRI was a medical issue and would not be addressed, and that his request to remove Defendant Tate was not a proper request by an inmate.  Robinson Decl. Ex. B.

///

///

---

[2] Some of the appeals have two log numbers.  For clarity, the Court will refer to the log number identified by Plaintiff in his allegations.

10

*Appeal 12033521*

Plaintiff filed appeal number 12033521 on April 5, 2012. Robinson Decl., ¶ 8, Ex. C. Plaintiff complained that a new doctor had given him a cortisone injection in December, and had injected him in a completely different "spot" than prior doctors. Plaintiff did not get relief and was in constant pain several weeks later. In January, while doing stretches, Plaintiff heard a tear in his left shoulder. Dr. Vu recommended x-rays even though Plaintiff expressed concern about an x-ray detecting soft tissue injuries. Plaintiff complained that he had been in constant pain and requested that an MRI be performed for a proper diagnosis. Robinson Decl. Ex. C.

Defendant Vu interviewed Plaintiff on April 27, 2012, and Defendant Shiesha denied the appeal at the First Level. Defendant Shiesha determined that Plaintiff's doctor had properly determined an appropriate course of treatment. Robinson Decl. Ex. C.

In appealing the denial, Plaintiff complained about Defendant Vu's April 27, 2012, examination and repeated his request for an MRI. Robinson Decl. Ex. C.

Defendant Joaquin denied the appeal at the Second Level on June 11, 2012. Defendant Joaquin explained that Plaintiff could not demand specific medication or diagnostic treatment, and that his review of medical records indicated that he was receiving appropriate medical care. Robinson Decl. Ex. C.

The appeal was denied at the Third Level on November 7, 2012. Robinson Decl. Ex. C.

*Appeal 12033906*

On June 12, 2012, Plaintiff submitted appeal number 12033906, contending that since April, his requests for refills of ferrous sulfate were being ignored. Plaintiff believed that this was done in retaliation for appeal 12033521, filed against Defendant Vu. He requested a refill of his medication. Robinson Decl. ¶ 8, Ex. D.

Defendant Shiesha partially granted the appeal at the First Level on July 10, 2012, to the extent that Plaintiff would be free from reprisals. Robinson Decl. Ex. D. However, Plaintiff's request for iron supplements was denied as medically unnecessary. Robinson Decl. Ex. D.

Defendant Joaquin denied the appeal at the Second Level on August 7, 2012. Robinson Decl. Ex. D.

The appeal was denied at the Third Level on December 21, 2012. Robinson Decl. Ex. D.

*Appeal 13034832*

Plaintiff filed appeal number 13034832 on April 9, 2013, requesting a copy of the "policy for approving a shoulder MRI." Robinson Decl. ¶ 8, Ex. E. Plaintiff explained that Defendant Vu told him that policy prevented him from ordering an MRI sooner. Defendant Vu showed Plaintiff the policy on his computer, but would not print him out a copy.

On April 19, 2013, Defendant Shiesha denied the appeal at the First Level, explaining that copies of policies are not provided by Primary Care Physicians. Plaintiff was informed that he could review policies and procedures at the library and obtain copies. Robinson Decl. Ex. E.

In appealing the denial, Plaintiff stated for the first time that he had been denied an MRI for the past two years, and that Defendant Vu cited policy in making Plaintiff undergo injections and physical therapy first. He also argued that the O.P. Manual is no longer in the library, and that copies should therefore be provided. Robinson Decl. Ex. E.

Defendant Longcrier denied the appeal at the Second Level on May 17, 2013. Defendant Longcrier explained that inmates could not demand specific medical treatment. Defendant Longcrier also noted that it was not appropriate to add new issues to the appeal, and the new issue would not be addressed. Robinson Decl. Ex. E.

The appeal was denied at the Third Level on October 2, 2013. Robinson Decl. Ex. E.

**E.**     **DISCUSSION**

    1.     Appeals Process

California law affords prisoners the right to appeal administratively any departmental decision, action, condition, or policy which they can demonstrate have an adverse effect upon their health, safety, or welfare. Cal.Code Regs. tit. 15, § 3084.1(a). Since the revision of applicable regulations effective January 28, 2011, CDCR's appeal process consists of three levels of appeal: (1) a first level appeal filed with one of the institution's appeals coordinators unless exempted; (2) a second level appeal filed with the institution head or designee; and (3) a third level appeal filed with the CDCR Appeals Chief. Cal.Code Regs. tit. 15, §§ 3084.7, 3084.8. The inmate must submit the first level appeal within 30 days of the occurrence of the event being appealed or of first having

knowledge of the action or decision being appealed.  Cal.Code Regs. tit. 15, § 3084.8(b).  A prisoner exhausts the appeal process when he completes the third level of review.  Cal.Code Regs. tit. 15, § 3084.1(b); Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010).  A "cancellation or rejection" of an appeal "does not exhaust administrative remedies."  Cal.Code Regs. tit. 15, § 3084.1(b).

2.   Analysis

As an initial matter, the Court notes that Defendants' motion was submitted as an attack on the allegations in Plaintiff's original complaint, which was the operative complaint at the time the motion was submitted.  Now, however, the operative complaint is Plaintiff's October 19, 2015, First Amended Complaint.  Defendants opted to proceed with this motion after Plaintiff filed his First Amended Complaint.  Therefore, these findings apply only to Plaintiff's allegations occurring prior to May 28, 2013, the time Plaintiff filed this action.  In other words, these findings analyze <u>only the following claims for events occurring prior to May 28, 2013</u>, all of which are repeated in the First Amended Complaint:

(1)   Retaliation in violation of the First Amendment against Defendants Bingamon, Tate and Vu; and

(2)   Deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendants Bingamon, Tate, Vu, Shiesha and Joaquin.

As Defendants' motion did not address the exhaustion of claims related to events occurring after the filing of the original complaint, the Court will not analyze claims made for the first time in the First Amended Complaint.  While the new claims may ultimately be unexhausted, it is Defendants burden to raise such a challenge.[3]

Defendants concede that appeal 12033521 exhausts Plaintiff's claim against Defendant Vu for deliberate indifference insofar as he refused to order an MRI.  They argue, however, that Plaintiff's exhausted appeals do not exhaust any other claims against Defendants Bingamon, Tate, Vu, Shiesha and Joaquin.

In his opposition, Plaintiff contends that Defendants have not met their burden because they, or their declarants, have not "affirmatively stated" that he did not exhaust his remedies.  ECF No. 75,

---

[3] Plaintiff does not appear to have alleged compliance with the California Tort Claims Act in his First Amended Complaint.

at 2. Whether Plaintiff exhausted his administrative remedies, however, is a legal issue that the Court determines once it examines the undisputed facts.

        a. *Defendant Bingamon*

It is undisputed that the only appeal that specifically mentioned Defendant Bingamon, appeal 03-10-13065, was not fully exhausted because Plaintiff did not seek Third Level Review.

In opposition,[4] Plaintiff argues that Defendant Bingamon was his only primary care provider from approximately August 11, 2010, through March 9, 2011, and was aware of Plaintiff's complaints of shoulder pain during this time. Plaintiff then cites appeal 03-10-13844, which alleged that Defendant Tate's indifference to his pain prevented him "from obtaining proper medical health care (by the only health care provider Plaintiff was see[ing] during this time.)." ECF No. 75, at 4.

Plaintiff therefore argues that "the reference to 'proper medical health care' refers to Bingamon as the primary care physician." ECF No. 75, at 5. While Plaintiff is correct that he did not need to name every staff member involved and was not required to use legal terms, his description must nonetheless have been sufficient to put the prison on notice of the claims so as to fulfil the basic purposes of exhaustion. Reyes v. Smith, -- F.3d --, 2016 WL 142601 (9th Cir. 2016); Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).

In this regard, appeal 03-10-13844 was specifically about Defendant Tate's demeanor and his treatment of Plaintiff prior to December 15, 2010. It made no mention of any other medical provider, nor could it have encompassed events after December 15, 2010. Plaintiff's contention that his reference to "proper medical healthcare" would somehow have placed the prison on notice of all claims against Defendant Bingamon is untenable.

It is therefore undisputed that Plaintiff's deliberate indifference and retaliation claims against Defendant Bingamon for events occurring prior to May 28, 2013, are not exhausted.

///

///

///

---

[4] In Defendants' motion, they respond to Plaintiff's arguments, made during discovery, as to which appeals exhausted his claims. Plaintiff's arguments during discovery included more appeals than those discussed here. As Plaintiff opposed this motion and therefore made specific arguments in response to Defendants' contentions, the Court will only review those appeals referred to in Plaintiff's opposition.

1              b.      *Defendant Joaquin*

2      It is undisputed that none of Plaintiff's appeals specifically mentioned Defendant Joaquin.

3      Plaintiff argues that Defendant Joaquin, as an appeal reviewer, was "duty bound" to review
4 grievances, act on the evidence and remedy the issue. Although it is not entirely clear, he seems to
5 suggest that because he reviewed appeals 03-10-13844 and 12033521, he became part of the
6 underlying problem, and the initial appeal then encompassed (and exhausted) his actions.

7      Plaintiff is incorrect. As explained above, appeal 03-10-13844 dealt with Defendant Tate
8 and his treatment of Plaintiff prior to December 15, 2010. Appeal 12033521, filed on April 5, 2012,
9 related to Dr. Vu's treatment. There is nothing in either of these appeals that would have put the
10 prison on notice that Defendant Joaquin, during his reviews of Plaintiff's appeals, was deliberately
11 indifferent to Plaintiff's serious medical needs. While there are situations where an appeal reviewer
12 can be held liable for the underlying conduct, such liability is separate and apart from the exhaustion
13 requirement. In other words, Plaintiff is still required to exhaust his claims against him based on his
14 review of the appeals.

15      The undisputed facts therefore show that Plaintiff has not exhausted his Eighth Amendment
16 claim against Defendant Joaquin for events occurring prior to May 28, 2013.

17              c.      *Defendant Shiesha*

18      As with Defendant Joaquin, it is undisputed that none of Plaintiff's appeals specifically
19 mentioned Defendant Shiesha.

20      To the extent that Plaintiff argues that Defendant Shiesha's review of certain appeals
21 somehow exhausted the claims again her, he is incorrect for the reasons discussed above.

22      Plaintiff also suggests that Defendant Shiesha was the unknown doctor referred to in appeal
23 12033521. In that appeal, filed on April 5, 2012, Plaintiff states that in December, an unfamiliar
24 doctor gave him a cortisone injection "in a completely different spot" than prior doctors. Plaintiff
25 indicated that he did not receive relief, and then goes on to explain a January 2012 injury and his
26 issues with Defendant Vu's related treatment and denial of an MRI.

27      While it appears that Defendant Shiesha did give Plaintiff an injection in December 2011,
28 appeal 12033521 is not related to this treatment. Plaintiff describes the December 2011 injection as

1  background to his shoulder problems, and although he states that she administered the shot in a

2  different area, he does not specifically say that he had an issue with her treatment. Moreover, while

3  Plaintiff alleges that Defendant Shiesha denied his request for an MRI at the December 2011 visit,

4  this appeal makes no mention of her denial. Appeal 12033521 was not sufficient to place the prison

5  on notice of *any* claims against Defendant Shiesha.

6  The undisputed facts therefore show that Plaintiff has not exhausted his Eighth Amendment

7  claim against Defendant Shiesha for events occurring prior to May 28, 2013.

8                  d.       *Defendant Tate*

9  It is undisputed that in appeal 03-10-13844, filed on December 15, 2010, Plaintiff

10 complained that during a December 2, 2010, appointment, Defendant Tate was confrontational and

11 dismissive of Plaintiff's pain. Plaintiff contended that Defendant Tate's unprofessional attitude

12 prevented him from getting proper medical care, and he requested (1) that Defendant Tate be

13 removed from his position; (2) that inmates who file grievances against him not be retaliated against;

14 and (3) that he get necessary medical treatment, including an MRI that was ordered in October 2010.

15 It is also undisputed that this appeal was handled as a staff complaint. In the Third Level

16 denial, Plaintiff was informed that his request for an MRI was a medical issue and would not be

17 addressed.

18 Plaintiff contends that this appeal exhausted his retaliation claim against Defendant Tate "in

19 its entirety" because the Third Level response addressed the issue, finding that policy prohibits

20 retaliatory actions. However, although Plaintiff requested generally that inmates who appeal

21 Defendant Tate's actions be free from reprisal, he never set forth any facts about specific retaliatory

22 actions taken against him by Defendant Tate. This appeal therefore fails to exhaust any retaliation

23 claims for events occurring prior to May 28, 2013, against Defendant Tate.

24 Insofar as appeal 03-10-13844 addressed Plaintiff's claims of deliberate indifference against

25 Defendant Tate, the Court finds that the appeal exhausts Plaintiff's claim related <u>only</u> to the

26 December 2, 2010, visit. Plaintiff did not submit any appeals regarding any subsequent treatment

27 from Defendant Tate and any additional claims for events occurring prior to May 28, 2013, are

28 unexhausted.

16

e. *Defendant Vu*

As noted above, Defendants agree that appeal 12033251 exhausted Plaintiff's deliberate indifference claim against Defendant Vu related to his refusal to send Plaintiff for an MRI.

The appeal does not, however, address any other claims against Defendant Vu, including any other allegations of deliberate indifference related to his medical treatment, or any allegations of retaliation.

In his opposition, Plaintiff contends that appeal 12033251 was sufficient enough to place prison officials on notice of his claim that Defendant Vu took retaliatory action when he ordered a second inadequate diagnostic exam. Plaintiff is incorrect. This appeal makes no mention of any allegedly retaliatory actions.

Therefore, Plaintiff's deliberate indifference claim against Defendant Vu for failure to provide an MRI prior to April 5, 2012, is exhausted. The remaining claims against Defendant Vu, including the retaliation claim, for events occurring prior to May 28, 2013, are not exhausted.

f. *Unavailability of Remedies*

In his July 13, 2015, declaration, Plaintiff vaguely suggests that his administrative remedies were not available because of CDCR's policy of assigning the doctor who is the target of the appeal to investigate the appeal. Pl.'s Decl. ¶ 13 (ECF No. 70, at 3-4).[5] Plaintiff believes that this caused additional retaliation in the form of delayed and/or denied treatment. Pl.'s Decl. ¶ 15 (ECF No. 70, at 4). As Plaintiff believes that his appeals led to greater harm, he suggests that his administrative remedies were not available.

Plaintiff's argument is without merit. To meet his burden of showing that his administrative remedies were effectively unavailable, Plaintiff must "show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)). Here, although Plaintiff suggests that his grievances were causing further harm, he does not, in any way, indicate that his belief prevented him from filing any appeals. Plaintiff's speculative statement, without

---

[5] Defendants object to this paragraph of Plaintiff's declaration as irrelevant because it discusses the investigation of the appeal, rather than whether Plaintiff exhausted his claims. Defendants' objection is overruled insofar as Plaintiff's statement relates to his argument that administrative remedies were unavailable.

supporting evidence, is insufficient to demonstrate that his administrative remedies were unavailable.

## F.  RECOMMENDATION

The Court therefore RECOMMENDS that Defendants' motion for summary judgment be GRANTED IN PART, and all claims except (1) Plaintiff's deliberate indifference claim against Defendant Tate related to the December 2, 2010, visit; and (2) Plaintiff's deliberate indifference claim against Defendant Vu related to his refusals (prior to May 28, 2013) to send Plaintiff for an MRI, be DISMISSED WITHOUT PREJUDICE for failure to exhaust.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir.1991).

IT IS SO ORDERED.

Dated:   **January 26, 2016**                     /s/ *Dennis L. Beck*
                                                                        UNITED STATES MAGISTRATE JUDGE